FILED

2015 Mar-09  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

K.H., et al.,                          )
                                       )
            Plaintiffs                 )
                                       )
      vs.                              )        Case No.  2:10-cv-03167-HGD
                                       )
A.T.K, et al.,                         )
                                       )
            Defendants                 )

**MEMORANDUM OPINION**

The above-entitled civil action is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c). This action started as an interpleader action filed by Metropolitan Life Insurance Company (MetLife), pursuant to the Employee Retirement Income Security Act (ERISA) and Rule 22, Fed.R.Civ.P.  (Doc. 1, Complaint).  The complaint named as defendants K.H., J.K., A.K., A.T.K., I.P., C.W. and M.B.  MetLife alleges that A.T.K., I.P. and M.B. are surviving daughters of the deceased insured, Joseph Kight, and C.W. is the surviving son of Kight.  (*Id.* at ¶¶ 2-5).  It is also alleged that J.H. and A.K. may be surviving daughters of Kight, and J.K. may be a surviving son of Kight. (*Id.* at ¶¶ 6-8).  Kight was an employee of Southern Company Services, Inc., and was a participant in the Basic Group Life Benefits, an ERISA-regulated employee welfare

benefit plan sponsored by Southern Company Services and funded by a group life insurance policy issued by MetLife. (*Id.* at ¶ 11). Kight had no beneficiary designation forms on file when he died on January 4, 2008. (*Id.* at ¶¶ 15-16). Life insurance benefits of $12,500 are payable to the proper beneficiary(s) under the policy. (*Id.* at ¶ 17).

Kight's mother, Almatenia Kight, completed a Claimant's Affidavit to MetLife on August 27, 2008, stating that A.T.K., I.P., C.W. and M.B. are Joseph Kight's children and that there is no proof that K.H., J.K. and A.K. are his children. (*Id.* at ¶ 18). On September 30, 2008, Glenda Bailey (grandmother of M.B.) completed a claim for benefits on behalf of M.B. to MetLife. (*Id.* at ¶ 19). On October 5, 2008, Andrea Thornton made a claim to MetLife on behalf of A.T.K. (*Id.* at ¶ 20). On November 5, 2008, Phaedra Parker submitted a claim to MetLife on behalf of I.P. (*Id.* at ¶ 21). On January 27, 2009, Chermere Hobson submitted a claim to MetLife on behalf of K.H. (*Id.* at ¶ 22). On May 8, 2009, Jacqueline Hughes submitted a claim to MetLife on behalf of C.W. (*Id.* at ¶ 23). On August 6, 2009, Shondreika Sims[1] submitted claims to MetLife on behalf of J.K. and A.K. (*Id.* at ¶¶ 24-25).

MetLife averred that A.T.K., I.P., C.W. and M.B. are entitled to at least a 1/7 share of the proceeds; therefore, on February 22, 2010, MetLife paid into Total Control Accounts $1785.71 for each of those children, for a total of $7142.84. (*Id.* at ¶¶ 26-27). The interpleader complaint alleged that proceeds of $5357.13 remain,

---

[1] The complaint provides the name as "Shondrella [sic] Sims." However, the record establishes that her correct name is Shondreika Sims.

payable to the proper beneficiaries.[2] (*Id.* at ¶ 27).  MetLife stated it cannot determine whether K.H., J.K. and/or A.K. are Kight's children; therefore, it asked the Court to allow the remainder of the proceeds to be paid into Court and the Court to determine if K.H., J.K. and/or A.K. are actually Kight's children and entitled to any life insurance proceeds, failing which the remainder of the money should be apportioned among his established children (A.T.K., I.P., C.W. and M.B.).

As the relief sought, MetLife asked that the Court require appointment of a guardian or conservator for the minor children, enjoin the children from instituting any action or proceeding against MetLife with regard to the remaining plan benefits, require defendants to settle or litigate their claims to the remaining plan benefits or that the Court will do so, permit MetLife to pay the remaining plan benefits, plus any accrued interest, into the registry of the Court, discharge MetLife and dismiss it with prejudice from this action, and award MetLife its costs and attorney fees.  (*Id.* at ¶¶ 32, 35).

The docket sheet reflects that a copy of the summons and complaint were served on C.W. (Doc. 10), A.T.K. (Doc. 11), M.B. (Doc. 12), J.K. (Doc. 13), A.K. (Doc. 14), I.P. (Doc. 24), and K.H. (Doc. 25).[3]  Shondreika Sims filed a *pro se* answer on behalf of A.K. and J.K. (Doc. 19).  The answer avers that Ms. Sims and Mr. Kight were engaged and that Joseph Kight is the father of A.K. and J.K.  (*Id.*).  However,

---

[2] The court notes that $12,500.00 minus $7142.84 is actually $5357.16, not $5357.13.

[3] Each of the children were served in care of the person who submitted a claim to MetLife on behalf of that child.

the answer is not notarized or signed under penalty of perjury, and no supporting documentation is provided with the answer to show that A.K. and J.K. are children of Joseph Kight.

A report and recommendation (Doc. 16) was entered that the Court order:

(1) that MetLife be ordered to submit to the Court a check payable to Clerk, United States District Court, for the remainder of the life insurance proceeds at issue herein ($5357.13, according to the complaint), plus any interest that had accrued;

(2) that the Clerk of this Court be directed to deposit the check from MetLife into the registry of the Court until such time as the Court enters further orders regarding these funds;

(3) that MetLife, upon fulfillment of its requirements as set out in this order, be discharged and dismissed with prejudice as a party from this action;

(4) that MetLife be fully and forever released from all, any and/or further liability or duty with respect to the funds at issue;

(5) that defendants and all persons or parties claiming through them, and all claimants, be enjoined from bringing or prosecuting any claim against MetLife arising out of and relating to the funds at issue;

(6) that MetLife be awarded $350.00 in costs it incurred in filing this action, and the Clerk of Court be directed to pay, as soon as practicable, this sum to Bradley Arant Boult Cummings LLP, as attorney for MetLife, from the interpled funds to be paid into this Court; and

(7) that the Court decline to award MetLife its attorney fees in bringing this action, because it would deplete the funds, the determination of who may recover benefits falls within the routine business of an insurance company, and awarding attorney fees to MetLife shifts some of its ordinary business expenses to the claimants.

The report and recommendation was adopted and accepted by the District Court, without objection.  (Doc. 18).

MetLife subsequently paid the $5357.13 into the Court registry.  The Clerk of Court then entered an order noting the deposit in an interest-bearing account and directing the Clerk to deduct from the income earned on the investment a fee, not exceeding that authorized by the Judicial Conference of the United States and set by the Director of Administrative Office equal to 10% earned on the investment, whenever such income becomes available for deduction in the investment held and without further order of the Court.  (Doc. 20).

The parties were then realigned with the putative children (K.H., J.K. and A.K.) as plaintiffs and the established children (A.T.K., I.P., C.W. and M.B.) as defendants. (Doc. 23).  Further, an order was entered providing that (1) MetLife, Southern Company Services, Inc., and the Plan are fully and forever released from all, any and/or further liability or duty with respect to the insurance funds at issue in the above-styled action, and (2) A.T.K., I.P., C.W., M.B., K.H., J.K., and A.K. and all persons or parties claiming through them, and all claimants, are forever enjoined from

bringing or prosecuting any claim against MetLife, Southern Company Services, Inc. and the Plan arising out of and relating to the funds at issue.  (Doc. 27).

Thereafter, the court appointed guardians *ad litem* (GAL) for the children. Kenneth Gomany was appointed as GAL for K.H.; Donald Colee was appointed as GAL for J.K. and A.K.; Scott Brower was appointed as GAL for A.T.K.; Katherine Luker was appointed as GAL for I.P.; Joanne Jannik was appointed as GAL for C.W., and Jason Neff was appointed as GAL for M.B.  (Doc. 30).  Claims to the proceeds were filed in court by the GALs on behalf of J.K. (Doc. 41), A.K. (Doc. 42), A.T.K. (Doc. 36), I.P. (Doc. 34), C.W. (Doc. 32) and M.B. (Doc. 37).

A hearing was held on March 3, 2015, at which all GALs were present.  Mr. Gomany advised the court at the hearing that his attempts to contact the mother of K.H., Chermere Hobson, were unsuccessful.  He wrote a letter to Ms. Hobson, directed to her last known address, explaining that he had been appointed GAL for K.H. and the circumstances of this action.  The letter was not returned to him, nor did Ms. Hobson contact him in any way.  Mr. Gomany also went to the residence of Ms. Hobson (her last known address) and knocked on the door.  Despite the fact that there were vehicles in the driveway and Mr. Gomany waited for a while, no one came to the door.

Mr. Colee was able to discuss the matter with Shondreika Sims Mayo, the mother of A.K. and J.K.  Ms. Mayo advised Mr. Colee that she was engaged to Joseph Kight at the time of his death.  She stated that J.K. was Joseph Kight's son and bore his name and that she was pregnant with A.K. when Joseph Kight died.  Ms.

Mayo told Mr. Colee that she would provide him with birth certificates and other documentation to establish that Joseph Kight was the father of J.K. an A.K., as well as names of witnesses to whom Joseph Kight allegedy admitted he was the father of J.K. and A.K.  After the initial meeting with Ms. Mayo, Mr. Colee was unable to talk to Ms. Mayo again (apart from one phone call in which she again stated she would get the necessary information to Mr. Colee), despite repeated phone calls and letters advising her of the hearing and the necessity of providing him with the documentation and witness names as proof of her claim that J.K. and A.K. are children of Joseph Kight.

Mr. Brower advised the court that he was able to contact Almatenia Kight (Joseph Kight's mother) about this action and the claim of A.T.K.  Ms. Kight told him that she was aware of the case, but that "they already got the money, and they don't need any more and that they don't want to talk to" Mr. Brower.  Mr. Brower sent letters to Andrea Thornton, the mother of A.T.K, at two possible addresses for her. The letters were not returned to him; however, he received no response from Ms. Thornton.

Ms. Luker has provided the court with paternity test results and a certified copy of a birth certificate which show that Joseph Kight is the father of I.P.  Joseph Kight also was paying child support for I.P., pursuant to a court order.  Ms. Jannik provided the court with a certified copy of a paternity order in Tuscaloosa County Circuit Court Case No. CS-07-5373 which establishes that Joseph Kight is the father of C.W.

Mr. Neff advised the court that while he was able to talk to Kimberly Bailey, the mother of M.B., he was not able to obtain any documentation to prove that Joseph Kight was the father of M.B.  However, charges were being brought against Joseph Kight before he died for the statutory rape of Kimberly Bailey, which resulted in the birth of M.B.

## DISCUSSION

The court finds that the paternity of Joseph Kight as to the minor children A.T.K, I.P., C.W. and M.B. has been established, either because MetLife has accepted as established that Joseph Kight is the father of these children or based on evidence provided to the court by the GALs of these children.  Therefore, A.T.K, I.P., C.W. and M.B. are entitled to a share of the life insurance proceeds at issue.

With respect to the putative child of Joseph Kight, J.H., the court finds that, despite the diligent and reasonable efforts of Mr. Gomany to obtain proof of J.H.'s entitlement to proceeds, no such proof has been submitted to the court.  Therefore, the Court concludes that J.H. has not been established as the biological child of Joseph Kight and is not entitled to any portion of the life insurance proceeds at issue.

With respect to the putative children of Joseph Kight, J.K. and A.K., the court finds that despite the diligent and reasonable efforts of Mr. Colee to obtain proof of J.K. and A.K.'s entitlement to proceeds, no such proof has been submitted to the court.  The unsworn answer of Shondreika Sims is insufficient to establish that J.K. and A.K. are the children of Joseph Kight.  Therefore, the Court concludes that J.K.

and A.K. have not been established as the biological children of Joseph Kight and are not entitled to any portion of the life insurance proceeds at issue.

The court further finds that the GALs appointed by the court to represent the interests of the minor children in this action are entitled to a small payment to defray their expenses incurred while acting as GALs.  A payment of $100.00 to each GAL out of the insurance proceeds is reasonable and warranted, for a total of $600.00.

The original amount of life insurance proceeds was $12,500.00.  The amount paid into the court registry by MetLife was $5357.13.[4]  Counsel for MetLife already has been paid for the cost of filing this action ($350.00), reducing principal amount in the court registry to $5007.13.  After deducting the payments to the GALs ($600.00), the remaining proceeds in the court registry (not including interest) total $4407.13, for disbursement to the established children.  With each of the four established children of Joseph Kight entitled to a 1/4 share of the proceeds, that equates to $1101.78 for each child, plus any accrued interest and less the administrative fee described in Doc. 20.

Accordingly, the court finds that:

(1) the Clerk of Court shall be directed to pay, from the money deposited into the Court's registry, $100.00 to Kenneth Gomany for his services as guardian *ad litem* for K.H., $100.00 to Donald Colee for his services as guardian *ad litem* for J.K. and A.K., $100.00 to Scott Brower for his services as guardian *ad litem* for A.T.K.,

---

[4] As of the date of entry of this Memorandum Opinion, the amount in the court registry (with accrued interest in the amount of $82.07) is $5089.20.

$100.00 to Katherine Luker for her services as guardian *ad litem* for I.P., $100.00 to Joanne Jannik for her services as guardian *ad litem* for C.W., and $100.00 to Jason Neff for his services as guardian *ad litem* for M.B.

(2) K.H., J.K. and A.K. have not been established as biological children of Joseph Kight and are not entitled to a share of the life insurance proceeds at issue in this action;

(3) A.T.K., I.P, C.W and M.B. are established as biological children of Joseph Kight and are each entitled to a 1/4 share of the net amount of life insurance proceeds at issue in this action (after payments to Bradley Arant Boult Cummings LLP and the guardians *ad litem*), plus accrued interest and less the administrative fee described in Doc. 20;

(4) the Clerk of Court shall be directed to pay, from the money deposited into the Court's registry, 1/4 of the net amount of the proceeds, to Scott Brower, as guardian *ad litem* for A.T.K, to be remitted to Almatenia Kight, as the grandmother of A.T.K., for the use and benefit of A.T.K.;

(5) the Clerk of Court shall be directed to pay, from the money deposited into the Court's registry, 1/4 of the net amount of the proceeds, to Katherine Luker, as guardian *ad litem* for I.P., to be remitted to Phaedra Parker, as the mother of I.P., for the use and benefit of I.P.;

(6) the Clerk of Court shall be directed to pay, from the money deposited into the Court's registry, 1/4 of the net amount of the proceeds, to Joanne Jannik, as

guardian *ad litem* for C.W., to be remitted to Jacqueline Hughes, as the mother of C.W., for the use and benefit of C.W.; and

(7)  the Clerk of Court shall be directed to pay, from the money deposited into the Court's registry, 1/4 of the net amount of the proceeds, to Jason Neff, as guardian *ad litem* for M.B., to be remitted to Glenda Bailey, as the grandmother of M.B., for the use and benefit of M.B.

A Final Judgment in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 9th day of March, 2015.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE